The next argument will be in case number 22, 995, Dooley v. United States. Mr. Aviles, when you're ready. Good morning, Your Honors. Michael Aviles for the Plaintiff Appellant, Kevin Dooley. This is an appeal from a bench trial verdict taken on a case under the Federal Torts Claim Act. And we are appealing three main issues. The first issue being the liability portion of the case. The District Court found the plaintiff to be 40% at fault. We dispute that. I think the law is on our side on that issue. Secondly, the award for past pain and suffering we feel is inadequate. And the award of nothing or zero for future pain and suffering we also believe was inappropriate. The issue regarding liability, the court stated in coming to that conclusion that the plaintiff was 40% liable. The fact pattern of this accident was they speculated that Mr. Dooley was under the influence of marijuana at the time of the accident. That he was operating his vehicle too fast and being too close to the vehicle that we allege caused this accident. The fact pattern of how this case occurred was the defendant, Mr. Diesler, parked his car by his own testimony. Did not look in the side view mirror. Opened the door without looking back to see if anybody was coming. The plaintiff was operating his vehicle in the middle of the bicycle lane. He testified he was operating his bicycle, albeit electric bicycle or pedal assist bicycle, at approximately 15 miles an hour. When the door opened, he could not get out of the way and struck the door. As a result of the fall, the result of the accident, he sustained... Counsel, is your argument that if somebody is negligent per se, as the defendant was, because there is a statute that says you cannot rule in New York, that you cannot open the door, so there's no question that there was negligence per se. Is your argument that where somebody is negligent per se, a plaintiff cannot... Where a defendant is negligent per se, a defendant cannot be comparatively negligent? I'm not saying that. That's not our argument, Your Honor. Then what is your argument? Our argument in this case is that there's no evidence to say that he contributed to any comparative negligence in this case. That is, you are saying that somebody who is riding a bicycle has a right to ride it in the middle of that lane unless there is evidence that there was no traffic at all in the center, because he can assume that other people will follow the law. That is, you're saying the equivalent that if, while I may not have a right to speed when there's a green light, I don't have a duty to look because I can assume that the other person won't violate a red light. I believe that's correct, Your Honor. He's lawfully riding in the bike lane. He did nothing wrong. There's no evidence to suggest he did anything to contribute that would warrant comparative negligence in this specific case. I thought the magistrate judge found that he was kind of cheating closer to the car side of the lane. That was pure speculation, Your Honor. He did state that. But even assuming arguendo, he's riding in a lane that the defendants testified, I believe the biomechanical expert measured 7 feet. As far as I know, there is no law that says that you have to ride directly in the bike lane or maybe a foot to the left of the bike lane or a foot to the right of the bike lane. He was in the bike lane. You're saying that, you know, that a person has a right to assume the other person will follow the law and unless there's an odd reason. Now, you know, you may have a situation where there are hundreds of parked cars and there's no one driving on the road where a reasonable person would drive way to the left. But there's no evidence to that extent here. There's no evidence whatsoever, not a shred of evidence that says he was riding closer to the, let's call it the parked car lane. I believe the court said he should have been riding in the bike lane but closer to the traffic lane. What about speed? Speed, the only testimony in this case, the only testimony in this case is from Mr. Dooley that testified I was operating my vehicle at a speed of 15 miles an hour. The speed limit is 25. There's no evidence that he was going in. Well, of course, the fact that you are following the law doesn't mean you were negligent. You know, it may be that the speed limit is 25 miles an hour but a reasonable person would drive, would ride at 10 miles an hour. But is there any evidence here that, assuming that 15 is not perverse, is there any evidence that that was unreasonable because of the conditions? No, there's no evidence whatsoever. He's operating his bike safely, 15 miles an hour. The speed limit is 25 miles an hour. Everything, well, the issues that were brought up by the court. Also, he's intoxicated. I mean, that seemed to be very persuasive to the magistrate. Well, again, that was speculative. I think the only reason why the issue of intoxication or specifically being under the substance of marijuana, there was an issue regarding his partner testified that, yes, he smoked marijuana regularly. Other than that, there was nothing to indicate. Well, there was testimony by the defendant about his condition at the time of the accident. Some slurred speech and odd behavior when the medics arrived. That would tend to support an argument that somebody who regularly takes pot might have been intoxicated at this time. Now, I'll have a problem with that, which I'll put to the other side, and that is the magistrate judge said that he found the defendant a disinterested witness because he wasn't paying. Now, that's wrong. That's just plain wrong because the reason we passed the Clayton Act and the Federal Tort Claims Act was because we thought that a superior would punish you if you did something wrong rather than making you pay. So the notion that the witness was disinterested and didn't care about this is just an error. But if that weren't so, there would be testimony. A couple of points to this issue, your Honor. One, I believe Mr. Diesel, the defendant who opened the door, testified that he was disoriented afterwards and he was upset. It might have even been belligerent. But that is to be expected if you're riding your bicycle at, let's call it 15 miles an hour, and you run right into a stationary object, i.e. a door that the defendant opened, and everybody reacts differently. He sustained various, very serious injuries requiring multiple surgeries, a fracture to his knee, torn ligaments requiring two surgeries. And I guess everybody could act differently when they're involved in this kind of an accident. But I believe he said he was disoriented, which probably would be natural when you experience this kind of an accident. I don't think, from the case law that I cited, I don't think you could take that leap to say he was under the influence of anything, let alone marijuana. But if I could take it a step further, even assuming, even assuming, let's say there was evidence that he smoked marijuana five minutes prior to this accident. And by the way, Mr. Dooley testified he did not smoke marijuana that day. But let's just assume he did. There's no evidence whatsoever to suggest that him being under the influence caused somehow his behavior to be a proximate cause of this accident. Nothing. Zero. You're arguing that the fact that he may have been done something wrong, and something which could be negligence in some instance, that there's no evidence of causation. Correct. And that he could have been smoking pot, he could have been drunk. But if you're riding a bicycle at that time and somebody opens the door, you could be potted or not potted, but the accident would happen anyway. It's regardless. You know, I think you're wrong to allow that in to evidence based on the case law I provided. That is, unless the negligence increases the chances of just this kind of accident, negligence is not evidence of causation. Absolutely, Your Honor. That's what Cardozo said in a very famous speech. Absolutely, Your Honor. And there's no evidence whatsoever, no medical evidence to suggest there was anything in his bloodstream, let alone, let's just say marijuana, or the amount or the effect that it would have on Mr. Dooley. Nothing. So 100%, Your Honor, there's nothing to suggest that the alleged being under the influence of marijuana had anything to do with this accident. It would be nothing different than someone who's under the influence of alcohol stopped in his car at a red light and someone rear ends him. He's not at fault for that accident. And that correlation is the same thing here. He may be at fault, but he didn't cause it. Yes. Yes, Your Honor. Thank you, Counsel. You've reserved a couple of minutes for a moment. Thank you. Ms. Jude. May it please the Court. Jennifer Jude for the United States. The District Court's judgment in this case, it should be affirmed in all respects. Following a three day bench trial, the District Court correctly found that Mr Dooley was negligent and that that negligence approximately caused the accident. It correctly admitted evidence related to his habitual marijuana use and found that he was likely intoxicated at the time of the accident. It properly awarded no future pain and suffering damages, and its award of $175,000 for past pain and suffering damages was proper and supported by the evidence. I'll turn first to the comparative negligence point. The District Court did not err in finding that Dooley was negligent and that his negligence approximately caused this accident. So under New York law, bicyclists are required to exercise reasonable care, just as drivers are. And in particular, there's a New York vehicle and traffic law section that specifically says that bicyclists need to avoid unsafe conditions that are on the right-hand edge of the road, including fixed objects such as parked cars. There was ample evidence in this trial record. This is not a redo, of course, as appears to be suggested by opposing counsel. There's deference that's afforded to the trial court, which sat through a three-day bench trial, numerous witnesses on this. Then the district court at the end of that trial concluded that Mr. Dooley was riding too close to those parked cars. How could he – you have a right to assume that somebody will not violate the law. So you have a right to assume that somebody will not just swing the door open. Unless there is evidence that there was no traffic, then it is safer to ride nearer the side because you have a right to assume nobody will open the door on you than to ride nearer the other side where cars that are driving perfectly well may cause you harm. That is, a reasonable person has a right to assume – what I'm saying is the same as saying I may not have a right to speed across when I have a green light, but I don't have to look even though I have a duty to drive carefully because I'll assume nobody will cross the red light. Well, two things, Your Honor. The first is that there is that specific rule of the road, vehicle on traffic law. Which says you have to ride your bicycle carefully. It does, and it says you need to be cognizant of what's on the right-hand side as a cyclist, including parked cars, and make sure that you're avoiding unsafe conditions. I think an important piece of evidence in this case was the government's experts' measurement of the exact amount of space between Mr. Dizla's parked car and the edge line with the traffic, which was 7 feet, which is a very large amount of space. How large is an open door? I don't believe there was any specific evidence on that. There were photographs, Your Honor, but it is far less than 7 feet. Yeah, but it is less than 7 feet. But let's say, you know, we know what cars' doors are. It's about 3 feet. Yeah, so that in order to avoid that, he would have had to have been riding right at the left-hand side. Well, Your Honor, I think you still have 4 feet. And the district court looked at the photographs of where this car was parked, saw photographs of this exact intersection, had findings related to exactly how the district court believed this accident happened. Could you address for a moment the statement by the district court that found the defendant a disinterested witness because he didn't have to pay? I believe he found him a disinterested witness because there was no evidence that the outcome of the trial was going to affect him and his job in any way. Here's my problem, that when the law was passed to say that the government would be liable rather than government employees, it was passed and it was part of that and has been said again and again and again, most recently in a case involving Mr. Trump and Ms. Carroll by the court, that the reason that this was done was that it was better to have the government employer be able to sanction, punish, and so on an employee who did something wrong rather than having him pay damages. So the notion that this, that the defendant in this case didn't care how the case came out because the government would not sanction seems to me just political. Your Honor, Plaintiff had the opportunity to elicit biased evidence related to what would have happened to Mr. Dizla, had this... No, no, no, you don't have to say that. It's the judge saying I want to believe this witness because I think he's disinterested when the witness has an interest in how the case comes out. Why should the plaintiff have to put in evidence about particular interests when the other side wins or loses? Even putting aside Mr. Dizla's testimony in the case, there's ample evidence that supports his finding of 40% liability for Mr. Dooley based on... But on that basis, just on the basis where he was writing because the basis of his being intoxicated depends on the testimony of the defendant. Only in part, Your Honor. No, only in part, but we have cases which say the fact that somebody has, does use pot at a certain time is not enough to say that they were using it at the time. The thing that links it to this is your, is the defendant's statement about how he appeared at the scene. Without that, you don't have it. You just have evidence of habit, which is not admissible. Well, there's not just Mr. Dizla's testimony about how Mr. Dooley appeared at the scene. There's also the medical records from the FDNY, which were in evidence and which described Mr. Dooley's behavior at the scene as well. So Mr. Dizla's account was corroborated by the FDNY first responder's account. As to the habit evidence, we believe that was properly admitted in a very deferential standard to the district court on its evidentiary ruling. It falls squarely within the definition of habit, given that it's daily, daily use of marijuana. It was Mr. Dooley himself who testified that he used marijuana multiple times a day, every day. He also testified that he did not smoke on that particular day. However, the district court found him generally to be not credible, and that credibility determination was entitled to make. On what basis? On what basis did it find him to be not credible, Your Honor? Just on that issue. With respect to that, I think the credibility findings that were made at the beginning of the opinion were with respect to his entire testimony. Can you tell me how the marijuana, even assuming that he was on pot, increased the chances of this accident happening? So what the district court said was that being intoxicated made it more likely that he was not exercising appropriate attention to the conditions of the road. So that could have been a contributing factor to him riding too close to the parked cars and to him speeding. To him... You mean because he was on pot, he was more likely to drive near a car than on the other side? Why would somebody who was on pot... I mean, I don't know. There are many things that being on pot would increase the chances of. I just am having a little trouble finding the notion that I've written probably more cases than anybody saying that negligence can be a basis for finding causation. Traditionally, one didn't do it. I'm one of the people who has written more saying that negligence can be a basis of causation. But I'm having a little trouble finding it here. I think as we say in our brief, Your Honor, that intoxication is not necessary to affirm the proximate causation finding by the district court. It's not clear error even if you take that piece away because the way that I read the district court's opinion, the intoxication is what made it more... That is, I'm not saying that there isn't some evidence on the basis of which the district court could say that the plaintiff was in part comparative negligent. I'm just asking whether there were sufficient errors so that we cannot be sure, we cannot affirm a 40%. See, what is comparative depends on wrongdoing and causation in New York, both. It's responsibility in New York. And I'm not saying that at the end of a trial, someone couldn't say, perhaps, that the plaintiff was to some extent comparative negligent. I'm just saying that I have trouble finding that there are sufficient errors in how the district court did it that I'm not sure 40% is right. Well, Your Honor, we respectfully disagree. We don't think it's appropriate to second-guess what the district court did here after a three-day bench trial. We don't see any clear errors in any of the findings related to liability. I see I'm out of time. I'm happy to address damages if Your Honors would like. I have no problem with that other side. I have no problem with the total amount of damages. Thank you, Counsel. Mr. Aviles, you have two minutes for rebuttal. Briefly, Your Honor. So to address the issue of we talked about the door opening up, I approximated the door to be roughly three and a half feet. I don't see how, how, whether he was driving to the left of the middle of the bike lane or the right of the middle of the bike lane, this accident could have been avoided. As far as, because the door is three and a half feet to four feet, they testified the bike lane is seven feet. So let's just say he's riding in the closer to, let's say, two feet away from the line, he still would have struck the door. And by Mr. Diesel, the defendant's own statement, he said as soon as he opened up the door, Mr. Dooley struck his door. So how could that have been avoided under any circumstance? It couldn't have. Whether he was on, you want to call it, under the influence of marijuana or anything else, which there's no evidence to that to substantiate how much was in the system, but there's no evidence of that, was brought up by defendants that the FDNY, whose evidence regarding their testimony regarding his behavior, his behavior was just he was belligerent and upset. That's all it was. There's no inference there of him being under the influence of anything. And if someone's upset that, hey, I just, this man just opened up his door, didn't apologize and I broke my knee and I, you know, suffered, you know, catastrophic injuries to my ankle. So I don't see, I don't see how that's evidence of Mr. Dooley being under the influence of anything. And lastly, and it's interesting to point out, Mr. Disla changed his story of how the accident happened multiple times. Multiple times. That's being polite to describe his testimony. And that's why the district court said, you know what, we're going to go with exactly what you said contemporaneously to the police. That you didn't look in your side window. I'm sorry, I couldn't hear. He testified that he did not look at his side view mirror before opening the door. He opened the door without basically looking. Well, but there was no question he was negligent. And you're not arguing that there is an argument that he was so negligent there should have been punitive damages or other things. So the fact that more might have been said, that's not before us. That's irrelevant. I just brought it up, Your Honor, because this is not the behavior of a disinterested witness, someone who changes their testimony. Oh, okay. I think clearly he's interested. And clearly, I don't know how the district court found his testimony in any aspect of this case to be credible. But they did. That's it, Your Honor. Thank you very much. Thank you, counsel. Thank you both. We'll take the case under advisement.